IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LESHON EUGUENE JOHNSON, A.K.A., SHON JOHNSON,<br><br>Defendant. | Case No. 25-CR-12-JFH |

## ORDER AND OPINION

Before the Court is Defendant Leshon Euguene Johnson's Second Motion for New Trial brought under Federal Rule of Criminal Procedure 33 ("Motion"). Dkt. No. 224. The United States of America (the "Government") opposes Defendant's Motion. Dkt. No. 225. For the following reasons, Defendant's Motion is DENIED.

## BACKGROUND

In this case, Defendant was accused of managing a dog fighting operation known as "Mal Kant Kennels" in the Eastern District of Oklahoma. Dkt. No. 94 at 2. As part of this operation, Defendant would selectively breed dogs to produce offspring with desirable fighting traits, would sell stud rights to particularly successful fighting dogs, and would generally traffic fighting dogs to other dog fighters across the United States. *Id.* at 2-3. Search warrants were eventually executed at Defendant's properties, resulting in the seizure of 190 pit bull-type dogs. *Id.* As part of its investigation, the Government also obtained several other items of evidence, including

1

Defendant's phone, which contained groupchats, text messages, photographs, and videos related to his alleged possession and sale of fighting dogs, financial transactions showing that Defendant received over $400,000 for the sale of his dogs over four years, items on his property commonly associated with training dogs to fight, and dog fighting "pedigrees" and "registry" papers. Accordingly, the Government charged Defendant with twenty counts of possession of a dog for use in an animal fighting venture and three counts of the sale, transport, and delivery of a dog for use in an animal fighting venture, all in violation of 7 U.S.C. § 2156(b) and 18 U.S.C. §§ 49, 2. *Id.* at 94.

Defendant's case ultimately proceeded to trial, where the Government presented the above evidence to the jury. The Government also presented several experts to opine on various pieces of evidence related to dog fighting, as well as several non-expert witnesses, including an informant who testified about his own personal knowledge of Defendant's possession and use of fighting dogs. Eventually, on August 1, 2025, the jury convicted Defendant of three counts for possession of a dog for use in an animal fighting venture and three counts for the sale, transport, and delivery of a dog for use in an animal fighting venture. Dkt. No. 209.

Defendant later filed a pro se motion for new trial on August 13, 2025, even though he was represented by counsel of record. Dkt. No. 216. The Court denied that motion without prejudice but allowed Defendant to file a new motion if it was written, signed, and filed by his counsel by September 12, 2025. Dkt. Nos. 218, 223. His counsel timely filed Defendant's Second Motion for New Trial [Dkt. No. 224], which the Government now opposes. Dkt No. 225. For the following reasons, the Court agrees with the Government and denies Defendant's Motion.[1]

---

[1] Without seeking leave, Defendant also filed a Reply in violation of Criminal Chambers Rule 4.b. Dkt. No. 226. Regardless, the Court reviewed Defendant's Reply and determined that it does not change the Court's analysis below.

**STANDARD OF REVIEW**

"Upon defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "In other words, if after weighing the evidence and the credibility of the witnesses, the court determines that the verdict is contrary to the weight of the evidence such that a miscarriage of justice may have occurred, it may grant the defendant's motion." *United States v. Gabaldon*, 91 F.3d 91, 93–94 (10th Cir. 1996) (internal quotations omitted). However, "[a] motion for a new trial is not regarded with favor and is only issued with great caution." *United States v. Herrera*, 481 F.3d 1266, 1269–70 (10th Cir. 2007). Whether a new trial is warranted is up to the discretion of the trial court. *Id.* at 1270.

**DISCUSSION**

**I.	The Government did not commit prosecutorial misconduct.**

Defendant first argues that the Government committed several acts of prosecutorial misconduct that affected his trial's fairness. Dkt. No. 224 at 2. "Allegations of prosecutorial misconduct are mixed questions of fact and law that require a two-step process for review." *United States v. Rogers*, 556 F.3d 1130, 1140–41 (10th Cir. 2009). The initial step of this analysis requires the Court to examine "whether the prosecutor's conduct was in fact improper." *Id.* If this step is satisfied, then the next step requires the Court to examine whether the improper conduct prejudiced Defendant by "influenc[ing] the verdict." *United States v. Gordon*, 173 F.3d 761, 769 (10th Cir. 1999). For the following reasons, the Government did not commit prosecutorial misconduct, and therefore, Defendant is not entitled to a new trial on this basis.

Defendant asserts that the Government committed prosecutorial misconduct by "presenting videos of dogfighting to the jury, which were of no connection to the Defendant." Dkt. No. 224 at 2. According to him, these videos "unduly fostered an environment of prejudice among the jurors," thus depriving him of an impartial jury and constituting prosecutorial misconduct. *Id.* However,

the Court finds no impropriety on the Government's part. Indeed, Defendant asserted at trial that he did not know his dogs were being used for fighting. Consequently, the Government presented videos from Defendant's phone to show that he knew his dogs were being used for fighting. In other words, the Government presented probative evidence, which the Court admitted, to establish an element of his charged crimes. These facts do not provide a basis for prosecutorial misconduct.

Defendant also contends that the Government committed a *Brady* violation by "suppressing exculpatory evidence received from Private Investigator BL [sic] Cozad. Jr.," who would have provided "valuable testimony based on the absolute protections and guarantees of the United States Constitution." *Id.* at 2-3. As a reminder, *Brady* requires the United States to disclose any material, exculpatory evidence in the Government's "possession or control" to a defendant. *United States v. Erickson*, 561 F.3d 1150, 1163 (10th Cir. 2009) (discussing *Brady v. Maryland*, 373 U.S. 83 (1963)). But here, Defendant is not alleging that the Government withheld exculpatory evidence from him. Nor could he—Mr. Cozad was *Defendant's own witness*, not the Government's. Instead, Defendant asserts a *Brady* violation because the Government moved to suppress his own witness's testimony at trial. This argument misunderstands *Brady*'s disclosure requirement and does not establish prosecutorial misconduct. *See United States v. Atwell*, 766 F.2d 416, 421 (10th Cir. 1985). For these reasons, Defendant fails to show any prosecutorial misconduct that warrants a new trial.

## II.    Mr. Cozad's testimony was properly excluded.

Next, Defendant argues that the Court's exclusion of Mr. Cozad's testimony deprived him of a fair trial. Dkt. No. 224 at 3. According to Defendant, Mr. Cozad would have testified "on constitutional claims based on the 1st, 4th, 5th, 8th, 9th, and 10th Amendments," which "would have provided valuable arguments that strike directly against the animal cruelty statutes made

4

under the Animal Welfare Act." *Id.* Such testimony would have included the following opinions directly quoted from Defendant's Motion:

- [T]he commerce clause does not provide the Federal Government the constitutional authority to enact or enforce any animal cruelty laws;

- [W]ithout the animal cruelty statutes made under the Animal Welfare Act, there is no action against the Defendant that the Federal Government would have viably been able to justify;

- [T]o remove and deny the dominion of the individual over the animals the individual owns is an attempt to remove God as the source of rights (dominion) and force the owner into policies and beliefs rooted in the animal worshiping religious beliefs of Paganism based on majoritarianism which is prohibited by the Constitution of the United States; and

- [B]y codifying animal rights ideologies into statute, the Federal Government has exceeded it's [sic] constitutional authority and adopted a communist based policy toward the constitutionally protected and fundamentally inalienable human rights derived from our creator . . . in that the Federal Government has assumed the role of the government is to protect property from the property owner.

*Id.* at 3-5, 13. Mr. Cozad would have also testified on how the Humane Society's policies are "rooted in the religious practices and beliefs of animal worshipping Paganism," how "prominent leaders within the Washington D.C. establishment" are trying to create a "New World Order," and generally how communism and animal rights laws will destroy the United States. *Id.* 3-18.

From what the Court can tell, Defendant's primary purpose in using Mr. Cozad's testimony was to persuade the jury that 7 U.S.C. § 2156(b) and 18 U.S.C. §§ 49, 2 were unconstitutional and that he could not be convicted for violating those statutes. "However, when the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed. In no instance can a witness be permitted to define the law of the case." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988) (en banc). Nor can a witness

encourage jurors to "to violate their oath by refusing to apply the law as given in the Court's instructions." *United States v. Lucero*, 895 F. Supp. 1421, 1426 (D. Kan. 1995) (citing *United States v. Trujillo*, 714 F.2d 102, 105–06 (11th Cir. 1983). For these reasons, Mr. Cozad's proposed testimony was excludable.

Furthermore, Mr. Cozad's proposed testimony was irrelevant under Federal Rule of Evidence 401. Under Rule 401, proposed testimony is relevant if "(a) it has any tendency to make *a fact* more or less probably than it would be without the evidence, and (b) *the fact* is of consequence in determining the action." Fed. R. Evid. 401(a)-(b) (emphasis added). Defendant simply fails to identify any material fact that Mr. Cozad's testimony would have made more or less probable. Therefore, it was also excludable on relevancy grounds.

Finally, Mr. Cozad's proposed testimony was excludable under Federal Rule of Evidence 403. Under Rule 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. As stated above, Defendant fails to articulate any probative value for Mr. Cozad's testimony. At the same time, his testimony would have confused and misled the jury as to the issues in the case, wasted time on issues that were not being litigated, and potentially disrupted the fact-finding function of the jury. Therefore, his proposed testimony was also excludable under Rule 403.

There was simply no basis to admit Mr. Cozad's improper and irrelevant testimony. Accordingly, Defendant is not entitled to a new trial based on Mr. Cozad's exclusion.

### III.   The photographs and videos related to dog fighting were admissible.

At trial, Defendant denied having any knowledge that the dogs he raised and sold were used for fights. To counter this point, the Government presented approximately forty photographs

and videos showing that he knew his dogs would be and were being used for fighting. *See* Dkt. No. 206-2, Govt's Exhibits 36-46, 56, 60, 64-65, 69, 80, 84, 86, 117-120, 122, 127, 129, 130-132, 134-139, 148, 152-153, 178, 180. Defendant objected to, and the Court overruled, ten of those exhibits during trial.

Now, Defendant argues that the Court's admission of dog fighting videos and photographs necessitate a new trial. Dkt. No. 224 at 18. He asserts that the "films of dog fighting . . . elicit[ed] an emotional response" from jurors and misled them by "coloring the Defendant in the same light as those actually seen in those videos, when in fact they were unconnected to the Defendant himself." *Id.* He also contends that admitting "pictures of dogs the Defendant has rescued" misled jurors into believing "that Defendant was involved in organized dog fighting." *Id.*

Defendant's Motion does not tell the Court which specific videos or photos were inflammatory or misleading. Because the Court overruled Defendant's objections to ten of these exhibits during trial, the Court will analyze those ten exhibits for Defendant's Motion. Those exhibits are listed and described below.

| | |
|---|---|
| Govt's Exhibit 38: | This is a video Defendant sent in a WhatsApp message thread between Defendant and L.R. The video shows dogs in a fighting ring. Someone in the video counts down to when the dogs can fight again. At the end of the video, one of the dogs is seen laying in the corner injured and unable to get up. |
| Govt's Exhibit 45: | This is a video Defendant sent L.R. in a text thread. The video shows an injured dog, and Defendant says the dog fought two other dogs. |
| Govt's Exhibit 69: | This is a video sent in a large WhatsApp group chat that included Defendant. The group chat discusses a dog fight to be held that day between dogs Spartacus and Ragnar. The video shows a dog down on the ground struggling. |
| Govt's Exhibit 86: | This is a video sent in a WhatsApp message thread with K.C. and Defendant. The video shows multiple dogs fighting. |

7

| | | |
|---|---|---|
| Govt's Exhibit 117: | | This is a video sent in a WhatsApp message thread with L.R. and Defendant. In the video, Defendant can be heard calling to a dog with extensive injuries. |
| Govt's Exhibit 122: | | This is a video Defendant sent L.R. in WhatsApp. The video shows a dog fight. The text string also provides a play-by-play of the fight, using terms like "scratching" and "game." |
| Govt's Exhibit 123: | | This is a post of a dog fight sent in the same WhatsApp message thread with L.R. and Defendant as Exhibit 122. |
| Govt's Exhibit 130: | | This is a video Defendant sent to L.R. in a text thread. The video shows a dog that appears to have been in a recent fight. Defendant captions it in text with "CH DART." |
| Govt's Exhibit 138: | | This is a video Defendant sent to L.R. in a text thread. The video shows a dead dog on a makeshift spring pole. |
| Govt's Exhibit 148: | | This is a video Defendant sent to T.B. in a text thread where Defendant sent T.B. "pedigrees" for fighting dogs and discussed T.B. starting his own dog yard. The video shows multiple dogs fighting. |

After reviewing Defendant's Motion, the Court finds no reason to order a new trial based on the admission of these exhibits. At trial, Defendant argued that he did not know his dogs were being used for fighting, and he now argues that he had no connection to these exhibits. Dkt. No. 224 at 18. But these photos and videos, which were found *on Defendant's phone*, show otherwise. In fact, Defendant himself sent most of these photos and videos to these dog-fighting customers, and he received the rest of these photos and videos from those same individuals. Combined with their accompanying text threads, which included Defendant or another individual's commentary about the dog fighting videos, discussions of "pedigrees" for the fighting dogs, and other inculpatory facts, a reasonable juror could conclude that Defendant knew his dogs were being used for fighting. Accordingly, the photos and videos shared in these chats were highly probative of his intent and knowledge to possess, sale, transport, and deliver dogs for fighting.

Furthermore, Rule 403 did not require exclusion of this evidence. Although some emotional response is expected for any juror who sees evidence of animal cruelty, the pertinent question is whether that emotional response "substantially outweighed" the photos and videos' probative value. Fed. R. Evid. 403. Because Defendant denied knowing that his dogs were used *for fighting*, and because these dog fighting photos and videos show otherwise, the Court finds that the exhibits' strong probative value outweigh any prejudicial effect. Accordingly, Defendant is not entitled to a new trial just because this evidence was admitted.

IV.     **Defendant fails to establish juror misconduct.**

Defendant also moves for a new trial because several jurors allegedly slept during his trial. Dkt. No. 224 at 19. However, "juror misconduct, such as inattentiveness or sleeping, does not warrant a new trial absent a showing of prejudice." *United States v. McKeighan*, 685 F.3d 956, 973 (10th Cir. 2012). "To determine prejudice, courts may consider whether the sleeping juror missed large portions of the trial or whether the portions missed were particularly critical." *Id.* at 974 (quotations and citations omitted). "Courts also may review the record to determine whether the district court was made aware of sleeping jurors, whether the court took action, and whether the record establishes that jurors were actually sleeping." *Id.* Importantly, "[a] defendant's general assertions that jurors dozed off during parts of a trial are too vague to establish prejudice." *Id.*

Here, neither the Defendant nor the Government notified the Court of any sleeping jurors. Further, Defendant "did not assert prejudice during the remainder of trial," nor did he request the Court to "investigate whether jurors were sleeping or request the substitution of alternate jurors." *Id.* at 975. Nor has Defendant "identified the portions of trial during which jurors allegedly slept or established that these portions were critical." *Id.* Because Defendant's allegations "are too vague to establish prejudice," he fails to show he is entitled to a new trial.

9

V.       **The jury properly evaluated the Government informant's credibility.**

Finally, Defendant argues that he is entitled to a new trial because "the prosecution's case relied heavily on a single informant who had a motive to lie, as he was implicated in dog fighting and sought leniency." Dkt. No. 224 at 19. However, this argument turns on the credibility of the Government informant's testimony, which is an issue for the jury to decide. *See United States v. Cardinas Garcia*, 596 F.3d 788, 794 (10th Cir. 2010). And courts "will overturn a jury's credibility determination and disregard a witness's testimony only if the testimony is inherently incredible— that is, only if the events recounted by the witness were impossible 'under the laws of nature' or the witness 'physically could not have possibly observed' the events at issue." *Id.* (quoting *United States v. Oliver*, 278 F.3d 1035, 1043 (10th Cir. 2001)).

That is not the situation here. Numerous electronic messages and border crossing records corroborated the informant's testimony. Furthermore, the Government and informant's cooperation agreement was elicited during direct and cross-examination, and the Court even instructed the jury to determine whether the informant's testimony was affected by self-interest. Dkt. No. 205 at 10. Accordingly, the Court finds no basis to substitute its judgment for that of the jury and order a new trial based on the credibility of the Government's informant.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Second Motion for New Trial [Dkt. No. 224] is DENIED.

Dated this 2nd day of October, 2025

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE